UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVELERS PROPERTY & CASUALTY
COMPANY OF AMERICA,

                              Plaintiff,

          - against -

CLEAR BLUE INSURANCE COMPANY,

                              Defendant.

**MEMORANDUM
OPINION & ORDER**

21 Civ. 4721 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          This is an insurance coverage dispute arising out of a personal injury lawsuit

pending in Supreme Court of the State of New York, New York County.  See Bentley Harry v.

J.T. Magen & Company Inc. and R&R Realty LLC, No. 157592/2020 (N.Y. Sup. Ct.).[1]  In the

underlying lawsuit, a subcontractor's employee who injured himself while working on a

construction project at 450 Lexington Avenue in Manhattan seeks to recover damages from a

general contractor and a building owner.

          Plaintiff Travelers Property & Casualty Company of America – the general

contractor's insurer – brings this action against Defendant Clear Blue Insurance Company – the

subcontractor's insurer, seeking a declaration that Clear Blue has a duty to defend and, if

necessary, indemnify the defendants in the Harry action; that the coverage provided by Clear

Blue is "primary"; and that Travelers should be reimbursed for litigation costs it has incurred.

---

[1]  The Court takes judicial notice of the Harry action "to establish the fact of such litigation and
related filings."  Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991); see Staehr v.
Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (affirming district court's
decision to take judicial notice of state court filings).

(Cmplt. (Dkt. No. 1) at 5-6)[2]  Travelers now moves for summary judgment.  (Mot. for Sum. J. (Dkt. No. 21))

For the reasons stated below, Plaintiff Travelers' motion for summary judgment will be granted in part and denied in part.

## BACKGROUND

I.      **FACTS**[3]

A.      **The Workplace Injury**

In 2018, J.T. Magen & Company Inc. was the general contractor for a construction project on the 40th floor of a building located at 450 Lexington Avenue in Manhattan.  (Cmplt. (Dkt. No. 1) ¶ 14; Pltf. R. 56.1 Stmt. (Dkt. No. 22) ¶ 10)  RXR Realty LLC owns that building.  (Cmplt. (Dkt. No. 1) ¶ 17)

By purchase order dated May 21, 2018, J.T. Magen entered into a subcontract with Toprock Interiors Inc.  (See Anderson Decl., Ex. 8 (Dkt. No. 25-1) (Purchase Order) at 1)  Toprock agreed to perform "certain renovation work" and "maintain[] . . . all safety precautions

---

[2]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

[3]  To the extent that this Court cites to facts from a Local Rule 56.1 statement, it has done so because the opposing party has either not disputed those facts or has not done so with citations to admissible evidence.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citations omitted).  Where Defendant Clear Blue disputes Plaintiff Travelers' characterization of cited evidence, and has presented an evidentiary basis for doing so, this Court relies on Clear Blue's characterization of the evidence.  See Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (drawing all rational factual inferences in non-movant's favor in deciding summary judgment motion).

Unless otherwise noted, the facts cited by this Court are undisputed.

and programs" at the job site.  (Def. R. 56.1 Resp. (Dkt. No. 27) at 5 ¶ 11; <u>see</u> Anderson Decl.,

Ex. 8 (Dkt. No. 25-1) at 4 (Purchase Order))

Under the terms of the Purchase Order, Toprock is responsible for, <u>inter alia</u>,

(1) "furnish[ing] all labor, materials, supervision[,] and items required for the proper and complete performance of the [construction work at the 450 Lexington Avenue job site]";

(2) "initiating, maintaining, and supervising all safety precautions and programs"; and

(3) providing certain lifting equipment such as "scaffold [or] access hoists."

(Anderson Decl., Ex. 8 (Dkt. No. 25-1) (Purchase Order) at 1-2, 4; Def. R. 56.1 Resp. (Dkt. No.

27) at 5-6 ¶¶ 10-14)

The Purchase Order also requires Toprock to "obtain and maintain" insurance that

covers J.T. Magen and RXR as additional insureds "on a primary and non-contributory basis."

(Anderson Decl., Ex. 8 (Dkt. No. 25-1) (Purchase Order) at 6; Def. R. 56.1 Resp. (Dkt. No. 27)

at 7 ¶ 15)

Finally, the Purchase Order requires Toprock to "fully indemnify" J.T. Magen and

RXR

[t]o the fullest extent permitted by law . . . from and against any and all claims . . . arising out of or in connection with or as a result of or as a consequence of (a) the performance of the [construction work at 450 Lexington Avenue] . . . , whether or not caused in whole or part by [Toprock] . . . or (b) any breach of [the Purchase Order].

(Anderson Decl., Ex. 8 (Dkt. No. 25-1) (Purchase Order) at 5)

On August 10, 2018, Bentley Harry – a Toprock employee – fell from a ladder

while working at the 450 Lexington Avenue job site.  (Def. R. 56.1 Resp. (Dkt. No. 27) at 9 ¶ 18,

10 ¶ 23)  On September 17, 2020, Harry filed a lawsuit against J.T. Magen and RXR in Supreme

Court of the State of New York, New York County, alleging negligence and violations of the

New York Labor Law.  (See Szczepanski Decl., Ex. 3 (Dkt. No. 24-28) (Harry Cmplt.)); see Harry v. J.T. Magen and R&R, No. 157592/2020 (N.Y. Sup. Ct.).

      The Harry Complaint and bill of particulars allege that J.T. Magen and RXR failed to provide Harry with "adequate hoists" or other lifting equipment, a "proper height-related device so that [he] could perform his work safely without falling," "an approved life net," and "an approved safety belt, harness, and lanyard."  (Anderson Decl., Ex. 10 (Dkt. No. 25-3) (Harry Bill of Particulars) ¶ 5; Szczepanski Decl., Ex. 3 (Dkt. No. 24-28) (Harry Cmplt.) ¶ 36 (alleging, inter alia, that defendants "failed and omitted to provide [Harry] with the proper and necessary equipment to perform his job))  Harry further alleges that J.T. Magen and RXR "failed to . . . furnish . . . scaffolding, hoists, . . . and/or other devices so as to give proper protection . . . to persons . . . employed" on the job site.  (Anderson Decl., Ex. 10 (Dkt. No. 25-3) (Harry Bill of Particulars) ¶ 5)

      On November 1, 2021, J.T. Magen and RXR filed a third-party complaint against Toprock for indemnity and contribution.  (Szczepanski Decl., Ex. 4 (Dkt. No. 24-29) at 6-8)  The third-party complaint alleges that Toprock is required to indemnify J.T. Magen and RXR for any damage award Harry obtains against them for injuries Harry sustained "by reason of [Toprock's] wrongful conduct and/or breach of its contractual obligations under the [Purchase Order]."  (Id. at 6)

      Harry's state court action remains pending.  See Harry v. J.T. Magen and R&R, No. 157592/2020 (N.Y. Sup. Ct. June 13, 2024), Status Conference, Dkt. No. 63.  On August 13, 2024, Harry filed a note of issue and certificate of readiness for trial.  Id., Dkt. Nos. 69-70.

**B.**    **The Insurance Policies**

**1.**    **The Travelers Policy**

J.T. Magen obtained a general liability insurance policy from Plaintiff Travelers

for the period between September 30, 2017 and September 30, 2018 (the "Travelers Policy").

(Def. R. 56.1 Resp. (Dkt. No. 27) at 1 ¶ 1)  The Travelers Policy provides coverage for up to $6

million of expenses associated with lawsuits seeking damages for "bodily injur[ies] . . . caused

by . . . accidents."  (Id. at 1, ¶ 2; Szczepanski Decl., Ex. 1 (Dkt. No. 24-1) (Travelers Policy) at

14 (affording up to $6 million of "general aggregate" coverage and up to $3 million for "each

occurrence" of bodily injury or property damage); see id. at 16 (defining coverage); see id. at 16,

32 (covering "bodily injury" that is "caused by an 'occurrence'" that may result in a claim))[4]

The Travelers Policy provides J.T. Magen – as the named insured – with

"primary" coverage.  (Szczepanski Decl., Ex. 1 (Dkt. No. 24-1) (Travelers Policy) at 2, 26)

However, in the event that J.T. Magen "is added as an additional insured under any other

policy," the Travelers Policy provides that the Travelers' coverage is "excess over any of the

other insurance . . . that is available to [J.T. Magen]."  (Id. at 26, 37)  And where the Travelers

Policy "is excess," Travelers "will have no duty . . . to defend [J.T. Magen] against any 'suit' if

any other insurer has a duty to defend the insured against that 'suit.'  If no other insurer defends,

[Travelers] will undertake to do so, but [Travelers] will be entitled to the insured's rights against

all those other insurers."  (Id. at 26)

RXR is named as an "additional insured" on the Travelers Policy.  (Szczepanski

Decl., Ex. 1 (Dkt. No. 24-6) (Travelers Policy) at 61; Pltf. R. 56.1 Resp. (Dkt. No. 29) ¶ 9 at 5)

As to RXR, Travelers also covers "liability for 'bodily injury' . . . or 'personal injury'" – but "if,

---

[4] The Travelers Policy is filed under Szczepanski Decl., Ex. 1 (Dkt. Nos. 24-1 to 24-26) on ECF.

and only to the extent that, the injury or damage is caused by acts or omissions of [J.T. Magen] or [Toprock] in the performance of [the construction work]." (Szczepanski Decl., Ex. 1 (Dkt. No. 24-1) (Travelers Policy) at 41)

> Travelers' coverage for RXR is
>
> excess over any valid and collectible other insurance, whether primary, excess, contingent or on any other basis, that is available to [RXR] for a loss [Travelers] cover[s] . . . .

(Id.) (internal quotation marks omitted)  If RXR is an additional insured under "any valid and collectible other insurance, whether primary, excess, contingent or on any other basis," the coverage provided to RXR by the Travelers Policy "is excess" to such other insurance.  (Id.) (internal quotation marks omitted)

The Travelers Policy also provides that if J.T. Magen has entered into a general contractor agreement with a client, and that agreement "specifically requires that [the Travelers Policy] apply on a primary basis or a primary and non-contributory basis" to the client,[5] then the Travelers Policy is modified to be "primary to other insurance available to [the client] which covers [the client] as a named insured for such loss, and [Travelers] will not share with that other insurance." (Id.) (internal quotation marks omitted)

## 2.    The Clear Blue Policy

Toprock obtained a general liability policy from Clear Blue for the period between September 12, 2017 and September 12, 2018 (the "Clear Blue Policy").  (See Szczepanski Decl., Ex. 2 (Dkt. No. 24-27) (Clear Blue Policy); Def. R. 56.1 Resp. (Dkt. No. 27) at 2 ¶ 4)

---

[5] The general contractor agreement between J.T. Magen and its client is not in the record.

The Clear Blue Policy provides Toprock – as the named insured – with "primary coverage" (Szczepanski Decl., Ex. 2 (Dkt. No. 24-27) (Clear Blue Policy) at 16), including for expenses Toprock incurs in connection with lawsuits seeking damages for "bodily injur[ies] . . . caused by an accident." (Pltf. R. 56.1 Stmt. (Dkt. No. 22) ¶ 5) There is a $2 million "general aggregate" limit and a $1 million limit for "each occurrence" of bodily injury. (Szczepanski Decl., Ex. 2 (Dkt. No. 24-27) (Clear Blue Policy) at 4)

In the contract it entered into with J.T. Magen, Toprock agreed to obtain "primary and non-contributory" insurance for J.T. Magen and RXR as additional insureds. (Anderson Decl., Ex. 8 (Dkt. No. 25-1) (Purchase Order) at 6 (requiring Toprock to "obtain and maintain" insurance that covers J.T. Magen and RXR as additional insureds "on a primary and non-contributory basis"); Szczepanski Decl., Ex. 2 (Dkt. No. 24-27) (Clear Blue Policy) at 71 (naming RXR and J.T. Magen as additional insureds))

The Clear Blue Policy provides coverage for additional insureds with respect to liability for "bodily injury" . . . caused, in whole or in part, by

> [Toprock's] acts or omissions; or
>
> [t]he acts or omissions of those acting on [Toprock's] behalf;
>
> in the performance of [Toprock's] ongoing operations for the additional insured(s) at the [450 Lexington Avenue construction site].

(Szczepanski Decl., Ex. 2 (Dkt. No. 24-27) (Clear Blue Policy) at 71; see also id. at 3, 6 (defining the terms "you" or "Named Insured" as Toprock Interiors Inc.))

An endorsement to the Clear Blue Policy states that,

> [w]here required by written contract, it is agreed that this policy shall be primary to any insurance carried by an additional insured, and any insurance carried by such additional insured shall not be called upon to contribute to any claim covered under [the Clear Blue Policy], provided that the claim arises directly from work performed by [Toprock] or others working directly on behalf of [Toprock] and

> provided further that the "occurrence" that gives rise to such claim happened
> subsequent to the execution of the written contract.

(Id. at 61)

In a cover letter accompanying the Clear Blue Policy, Clear Blue states that any claims may be tendered to National Claim Services, Inc., its third-party administrator.  (Id. at 2)

### C.    **Clear Blue's Coverage Position**

Clear Blue – which issued a general liability policy that lists Toprock as a named insured and lists J.T. Magen and RXR as additional insureds – has refused to provide a defense for J.T. Magen and RXR in Harry.  (Def. R. 56.1 Resp. (Dkt. No. 27) at 12 ¶ 34)  Accordingly, Travelers is currently providing a defense for J.T. Magen and RXR in the Harry litigation.  (Id. at 12-13 ¶¶ 35-36)

At multiple points between September 2018 and February 2021, Travelers tendered the defense of J.T. Magen and RXR to Clear Blue.  (See Anderson Decl., Ex. 11 (Dkt. No. 25-4) (Sept. 6, 2018 Tender Letter); id., Ex. 12 (Dkt. No. 25-5) (Sept. 28, 2020 Tender Letter); Szczepanski Decl., Ex. 7 (Dkt. No. 24-32) (December 28, 2018 to February 23, 2021 email thread))

In a September 6, 2018 letter – about a month after Harry's accident – Travelers tendered to Clear Blue its first demand for coverage on behalf of J.T. Magen and RXR. (Anderson Decl., Ex. 11 (Dkt. No. 25-4) (Sept. 6, 2018 Tender Letter))  In that letter, Travelers explained the relationship between J.T. Magen – Travelers' insured – and Toprock – ClearBlue's insured.  (Id. at 1)  It also informed Clear Blue that Harry had alleged that he "was injured during the course of his employment [at Toprock]," and while Travelers was "not in receipt of a claim or suit" at the time, if such claim was pursued, Travelers "would expect that Clear Blue

Insurance Company . . . would defend and indemnify J.T. Magen & Company, . . . and all applicable additional indemnitees on a primary non-contributory basis." (Id. at 1-2)

In a December 28, 2018 email, a claims specialist at National Claim Services – Clear Blue's "third party administrator" – rejected the tender as "pre-mature," citing Toprock's assertion that Harry had not suffered an injury and had "worked post-incident without any problems." (Szczepanski Decl., Ex. 7 (Dkt. No. 24-32) (December 28, 2018 to February 23, 2021 email thread) at 6; Def. R. 56.1 Resp. (Dkt. No. 27) at 11 ¶ 29) Based on the claims specialist's "discussions" with Toprock, National Claim Services did "not believe a claim will be presented. In the event that [Travelers] receive[s] anything indicating a claim will be presented, please forward to my attention, along with a renewed tender for consideration and handling." (Szczepanski Decl., Ex. 7 (Dkt. No. 24-32) (December 28, 2018 to February 23, 2021 email thread) at 6)

On September 28, 2020 – ten days after Harry filed his complaint in New York Supreme Court – Travelers re-tendered the defense and indemnification of J.T. Magen and RXR as additional insureds under the Clear Blue Policy. (Anderson Decl., Ex. 12 (Dkt. No. 25-5) (Sept. 28, 2020 Tender Letter) at 1-2; Def. R. 56.1 Resp. (Dkt. No. 27) at 11 ¶ 30) Todd Anderson – a Travelers representative – transmitted to National Claim Services a copy of the renewed tender, the state court summons and complaint, the executed contract between Toprock and J.T. Magen, and J.T. Magen's August 28, 2018 accident report. (Szczepanski Decl., Ex. 7 (Dkt. No. 24-32) (December 28, 2018 to February 23, 2021 email thread) at 2-5)

National Claim Services responded in the following February 23, 2021 email:

From: Steve McNeil . . .

Sent: Tuesday, February 23, 2021 9:14 AM

To: Anderson, Todd M . . .

Subject: [External] 39917 FW: (Tender accepted per Contract) Travelers Clm #EXE4944 NCS Claim #: Clmt: Bentley Harry

Hi Todd,

We will accept your tender on a primary and non-contributor[y] basis.

Please give me a call to discuss reimbursement of post-tender fees.

Thank you.

Regards,

Stephen McNeil

Senior Claims Specialist, National Claim Services

(Id. at 2)

That same day, at 10:08 a.m., Travelers replied to National Claim Services' email, confirming that Clear Blue is "accepting [the tender] on behalf of both named defendants" – J.T. Magen and RXR – and requesting that National Claim Services provide a "'formal' tender acceptance letter." (Id. at 1)

National Claim Services never transmitted a formal acceptance letter to Travelers, however, and National Claim Services did not otherwise respond to Travelers' February 23, 2021 email. (Def. R. 56.1 Resp. (Dkt. No. 27) at 12 ¶ 33)

## II.    PROCEDURAL HISTORY

The Complaint was filed on May 26, 2021. (Cmplt. (Dkt. No. 1))  Travelers seeks a declaratory judgment that (1) Clear Blue has a "duty to defend" and "to indemnify" J.T. Magen and RXR as additional insureds under the policy Clear Blue issued to Toprock; (2) the coverage provided by Clear Blue to J.T. Magen and RXR is "primary" with respect to expenses and damages associated with the Harry action; and (3) Travelers' coverage obligations to J.T. Magen and RXR are "excess" to the coverage provided in the Clear Blue Policy. (Id. at 5-6, ad damnum

clause)  Travelers also seeks reimbursement for litigation expenses it has incurred in defending the <u>Harry</u> action and in the instant action.  (<u>Id.</u> at 6)

On April 29, 2022, Plaintiff Travelers moved for summary judgment.  (Mot. for Sum. J. (Dkt. No. 21))

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Rule 56 Summary Judgment

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Fed. Trade Comm'n v. Moses</u>, 913 F.3d 297, 305 (2d Cir. 2019) (same).  "'A fact is material if it might affect the outcome of the suit under the governing law,'" and a fact dispute is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.</u>, 82 F.4th 161, 170 (2d Cir. 2023) (quoting <u>Mitchell v. Shane</u>, 350 F.3d 39, 47 (2d Cir. 2003)) (alterations accepted).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'"  <u>Spinelli v. City of New York</u>, 579 F.3d 160, 166 (2d Cir. 2009) (quoting <u>Brown v. Henderson</u>, 257 F.3d 246, 251 (2d Cir. 2001)).  However, "'[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'"  <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (quoting <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Under New York law,[6] an "[insurance] policy is read as a whole," and "'in construing an endorsement to an insurance policy'" – such as Clear Blue's endorsement concerning primary and non-contributory coverage for additional insureds – "'the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement.'"  Richner Commc'ns Inc. v. Tower Ins. Co. of N.Y., 72 A.D. 3d 670, 671 (2d Dept. 2010) (quoting Cnty. of Columbia v. Cont'l Ins. Co., 83 N.Y.2d 618, 628 (1994)).  "Insurance policies" are "in essence, creatures of contract," In re Estates of Covert, 97 N.Y.2d 68, 76 (2001), and accordingly, "interpreted [based on] general rules of contract interpretation."  Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 98-99 (2d Cir. 2012).  The "interpretation of [an unambiguous] contract 'is a matter of law for the court to decide,'" and thus appropriate for resolution at summary judgment.  Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) (quoting K. Bell & Assocs., Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)).

In determining whether summary judgment on a contract claim is appropriate,

> "a court should accord [contractual] language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish.  Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate.  The mere assertion of an ambiguity does not suffice to make an issue of fact.  Ambiguity resides in a writing when – after it is viewed objectively – more than one meaning may reasonably be ascribed to the language used.  Only where the language is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly."

---

[6] In this diversity action, the parties cite to New York law in their briefing.  (See, e.g., Pltf. Br. (Dkt. No. 23) at 12 (citing New York law in discussing an insurer's duty to defend); Def. Opp. (Dkt. No. 26) at 7 (same))  Accordingly, this Court applies New York law in addressing Plaintiff's summary judgment motion.  See Subaru Distributors Corp. v. Subaru of Am., Inc., 425 F.3d 119, 124 n.4 (2d Cir. 2005) (where the parties "cite only New York law," courts are free to "assume that New York law applies").

Palmieri v. Allstate Ins. Co., 445 F.3d 179, 187 (2d Cir. 2006) (quoting Thompson v. Gjivoje,

896 F.2d 716, 721 (2d Cir. 1990)).

## II.    DUTY TO DEFEND AND INDEMNIFY

In moving for summary judgment, Travelers argues that, under the Clear Blue

Policy, Clear Blue has a primary duty to defend and, if necessary, to indemnify J.T. Magen and

RXR in connection with the Harry action.  (Pltf. Br. (Dkt. No. 23) at 13-16)

Clear Blue denies that it owes a duty to defend or to indemnify J.T. Magen and

RXR.  (Def. Opp. (Dkt. No. 26) at 7-11)  In the alternative, Clear Blue argues that any duty to

defend is "co-primary" with Travelers.  (Id. at 11-13)

### A.    Applicable Law

An insurer has a duty to defend its insureds "'whenever the allegations in a

complaint against the insured[s] fall within the scope of the risks undertaken by the insurer,

regardless of how false or groundless those allegations might be.'"  High Point Design, LLC v.

LM Ins. Corp., 911 F.3d 89, 95 (2d Cir. 2018) (quoting Seaboard Sur. Co. v. Gillette Co., 64

N.Y.2d 304, 310 (1984)).  In such circumstances, the duty to defend is "exceedingly broad,"

Cont'l Cas. Co. v. Rapid-Am. Corp., 80 N.Y.2d 640, 648 (1993), and applies to an additional

insured "to the same extent as it does to a named insured" under the relevant policy.  BP Air

Conditioning Corp. v. One Beacon Ins. Grp., 8 N.Y.3d 708, 711 (2007).

In determining whether an insurer has a duty to defend, "the general rule" is "to

compare the allegations of the [underlying] complaint with the operative insurance policy."  Int'l

Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 148 (2d Cir. 2004).  A court may also

consider any facts within the "actual knowledge" of the insurer that "establish[es] a reasonable

possibility of coverage," Allianz Ins. Co. v. Lerner, 416 F.3d 109, 115 (2d Cir. 2005) (citations

and internal quotation marks omitted), even if "the extrinsic facts post-date the tender."  Zurich

<u>Am. Ins. Co. v. XL Ins. Am., Inc.</u>, 547 F. Supp. 3d 381, 404 (S.D.N.Y. 2021) (collecting cases),

<u>reconsidered</u> <u>on</u> <u>other</u> <u>grounds</u>, 556 F. Supp. 3d 301 (S.D.N.Y. 2021).  "'Any doubt as to whether

the allegations state a claim within the coverage of the policy must be resolved in favor of the

insured and against the carrier.'"  <u>Euchner-USA, Inc. v. Hartford Cas. Ins. Co.</u>, 754 F.3d 136,

141 (2d Cir. 2014) (quoting <u>Brook Shopping Ctr. v. Liberty Mut. Ins. Co.</u>, 80 A.D. 2d 292, 294

(1st Dept. 1981)).

       The duty to indemnify is "narrower," and applies "only if the claim for which the

insured has been judged liable lies within the policy's coverage."  <u>Allianz Ins.</u>, 416 F.3d at 115

(citing <u>Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.</u>, 91 N.Y.2d 169, 178 (1997)).

While the "duty to defend is 'measured against the possibility of a recovery, the duty to pay is

determined by the actual basis for the insured's liability to a third person.'"  <u>Id.</u> (quoting

<u>Frontier</u>, 91 N.Y.2d at 175).

**B.**    **<u>Analysis</u>**

       As discussed above, the Clear Blue Policy names J.T. Magen and RXR as

additional insureds, and provides coverage for lawsuits seeking damages for bodily injuries

"caused, in whole or in part, by [Toprock's] acts or omissions."  (Szczepanski Decl., Ex. 2 (Dkt.

No. 24-27) (Clear Blue Policy) at 71)  It is undisputed here that Clear Blue's duty to defend J.T.

Magen and RXR under the Clear Blue Policy is triggered if there is any "reasonable possibility

that [Toprock's] acts or omissions were the proximate cause of [Harry's] injury."  <u>Zurich Am.</u>

<u>Ins. Co.</u>, 547 F. Supp. 3d at 399 (citing <u>High Point Design</u>, 911 F.3d at 95); (<u>see</u> Pltf. Br. (Dkt.

No. 23) at 13-14 (citing <u>Liberty Mut. Ins. Corp. v. N.Y. Marine and General Ins. Co.</u>, 505 F.

Supp. 3d 260, 271 (S.D.N.Y. Dec. 7, 2020) for the same proposition, <u>reconsidered</u> <u>on</u> <u>other</u>

<u>grounds</u>, 590 F. Supp. 3d 597 (S.D.N.Y. 2022)); Def. Opp. (Dkt. No. 26) at 7-8 (citing

<u>Burlington Ins. Co. v. NYCTA</u>, 29 N.Y.3d 313, 323 (2017) for the same proposition))

As is also discussed above, Toprock is responsible – under its contract with J.T. Magen – for "maintaining . . . all safety precautions and programs," as well as "furnish[ing] all . . . materials . . . required for the proper and complete performance of the [construction work at the 450 Lexington Avenue job site]." (Anderson Decl., Ex. 8 (Dkt. No. 25-1) (Purchase Order) at 1-2, 4)  In particular, Toprock is required to provide certain lifting equipment, including "scaffold [or] access hoists."  (Id.)

In the Harry action, Harry contends that his fall from a ladder was caused – at least in part – by the absence at the job site of "adequate hoists," "scaffolding," and "proper height-related device[s]."  (Szczepanski Decl., Ex. 3 (Dkt. No. 24-28) (Harry Cmplt.) ¶ 36; Anderson Decl., Ex. 10 (Dkt. No. 25-3) (Harry Bill of Particulars) ¶ 5)  According to Harry, this equipment was necessary "so that [he] could perform his work safely without failing." (Anderson Decl., Ex. 10 (Dkt. No. 25-3) (Harry Bill of Particulars) ¶ 5)  Accepting these allegations as true, the injuries Harry sustained were "caused, in whole or in part, by [Toprock's] acts or omissions" in failing to provide the necessary hoists and scaffolding at the job site.  (See Szczepanski Decl., Ex. 2 (Dkt. No. 24-27) (Clear Blue Policy) at 71)  Because the claims in the Harry complaint appear to be covered by the Clear Blue Policy, Clear Blue has a duty to defend J.T. Magen and RXR.

In opposing summary judgment, Clear Blue argues that Toprock's negligence could not have been a proximate cause of Harry's injury, because the Harry complaint does not allege that the ladder from which Harry fell "was either provided by Toprock or was defective," or that Toprock was otherwise "responsible for such a hazard."  (Def. Opp. (Dkt. No. 26) at 9-10)

But Harry contends that Toprock's failure to provide "adequate hoists" and "scaffolding" was a proximate cause of his injuries.  (Anderson Decl., Ex. 10 (Dkt. No. 25-3) (Harry Bill of Particulars) ¶ 5; Szczepanski Decl., Ex. 3 (Dkt. No. 24-28) (Harry Cmplt.) ¶ 36)  Moreover, under the terms of the Purchase Order, Toprock had broad safety responsibilities for its employees working at the 450 Lexington Avenue construction site:  Toprock was obligated to "furnish all . . . materials" for the construction project and "maintain[] and supervise[] all safety precautions."  (Anderson Decl., Ex. 8 (Dkt. No. 25-1) (Purchase Order) at 4; see also Def. R. 56.1 Resp. (Dkt. No. 27) at 6-7 ¶¶ 13-14)

In sum, at this stage, the duty to defend determination does not require Travelers to identify the precise cause or causes of Harry's injuries.  Given that "the concept of proximate cause embraces the possibility of multiple causes of an injury," N.Y. Marine, 505 F. Supp. 3d at 272, and that Harry's allegations "fall within the scope" of Toprock's obligation to maintain a safe worksite, High Point Design, 911 F.3d at 95, Clear Blue has a duty to defend J.T. Magen and RXR.[7]

Clear Blue has not briefed the issue of whether it has a duty to indemnify J.T. Magen and RXR.  As discussed above, however, the duty to indemnify is "narrower" and "distinctly different" from the duty to defend.  See Allianz Ins., 416 F.3d at 115, 117; Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford, 64 N.Y.2d 419, 424 (1985) (describing the duty to indemnify as "distinctly different" from the duty to defend).  Accordingly, the Court addresses separately below the duty to indemnify issue.

---

[7]  Indeed, in a February 23, 2021 email to Travelers, Clear Blue's third-party administrator – National Claim Services – "accept[ed Travelers'] tender on a primary and non-contributor[y] basis," and appeared to acknowledge Clear Blue's duty to defend.  (Szczepanski Decl., Ex. 7 (Dkt. No. 24-32) (December 28, 2018 to February 23, 2021 email thread) at 2)

"'[W]hether, on what theory, and to what extent [J.T. Magen and/or RXR] may ultimately be held liable'" for Harry's claims cannot "'be predicted with precision.'" <u>Penguin Air Conditioning Corp. v. Travelers Indem. Co.</u>, No. 20 Civ. 3377 (JMF), 2021 WL 4392299, at *8 (S.D.N.Y. Sept. 24, 2021) (quoting <u>Spoor-Lasher Co. v. Aetna Cas. & Sur. Co.</u>, 39 N.Y.2d 875, 876 (1976) and alterations accepted).  Indeed, the issue of J.T. Magen and RXR's liability turns on a factual record that has not yet been developed.

Given that the factual record necessary to determine "the actual basis for the insured[s'] liability" has not yet been developed, <u>see</u> <u>Allianz Ins.</u>, 416 F.3d at 115, and that such "facts can and will be established" in the <u>Harry</u> action, it is premature for this Court to make a determination as to Clear Blue's duty to indemnify.  <u>Travelers Prop. Cas. Corp. v. Winterthur Int'l</u>, No. 02 Civ. 2406 (SAS), 2002 WL 1391920, at *6 (S.D.N.Y. June 25, 2002) (where "key facts can and will be established in an underlying proceeding," any decision "as to [an insurer's] duty to indemnify would be both hypothetical and speculative, and might be rendered moot by the result of [the underlying suit]"); <u>Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.</u>, 55 F.3d 114, 115 (2d Cir. 1995) ("[I]f there is a doubt as to whether the claim comes within the insurer's duty to indemnify, . . . the issue of indemnification [is left] to be settled after establishment of the insured's liability."); <u>Penguin Air Conditioning</u>, 2021 WL 4392299, at *8 (concluding that whether the insurer "owes a duty to indemnify . . . without reservation cannot be determined at this time," and "'must await the resolution of the underlying claim'") (quoting <u>Spoor-Lasher</u>, 39 N.Y.2d at 876).

\*          \*          \*          \*

For the reasons explained above, Travelers is entitled to summary judgment on the issue of Clear Blue's duty to defend J.T. Magen and RXR. Travelers' motion will, however, be denied without prejudice as to Clear Blue's duty to indemnify.

## III.     PRIORITY OF COVERAGE

As discussed above, Travelers also seeks summary judgment on the issue of whether Clear Blue has a primary duty to defend J.T. Magen and RXR in the <u>Harry</u> litigation. (Pltf. Br. (Dkt. No. 23) at 15-16)  Clear Blue contends that if it has a duty to defend, any such duty is "co-primary" with Travelers.  (Def. Opp. (Dkt. No. 26) at 11-13)

### A.     Applicable Law

"'[W]here the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage . . . , priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective other insurance clauses.'" <u>Travelers Prop. Cas. Co. of Am. v. Wesco Ins. Co.</u>, 585 F. Supp. 3d 463, 469 (S.D.N.Y. 2022) (quoting <u>Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.</u>, 462 F. Supp. 3d 317, 327 (S.D.N.Y. 2020) and alterations accepted); <u>see</u> <u>Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA</u>, 65 A.D. 3d 12, 18 (1st Dept. 2009) (same).

To resolve the priority of coverage issue here, this Court must determine whether (1) Travelers and Clear Blue insured against the same risk, and if so, whether (2) Travelers' obligations to J.T. Magen and RXR are "excess" to Clear Blue's obligations, such that Clear Blue has the "primary" duty to defend both entities in the <u>Harry</u> action.

In determining whether two policies cover the same risk, a court considers whether "both insurance policies [are] triggered by the same underlying event or action." <u>Beazley Ins. Co., Inc. v. Ace Am. Ins. Co.</u>, 150 F. Supp. 3d 345, 357 (S.D.N.Y. 2015) (citing <u>Nat'l Cas. Co. v. Vigilant Ins. Co.</u>, 466 F. Supp. 2d 533, 541 (S.D.N.Y. 2006)).  "'The test to be

applied is not identity in minute particular of the terms, conditions and provisions of each policy, but whether the policies insure the same property, the same interests and against the same risk.'" Ocean Harbor Cas. Ins. Co. v. Great Am. E&S Ins. Co., 454 F. Supp. 3d 180, 183 (E.D.N.Y. 2020) (quoting Cont'l Ins. Co. v. Commercial Union Ins. Co., 27 A.D. 2d 333, 336 (1st Dept. 1967)).

Where an insured has coverage under two insurance policies for the same risk, the court proceeds to the second inquiry, which addresses what each insurer's "respective obligations" are. Int'l Bus. Machines Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 429 (2d Cir. 2002) (citing State Farm Fire & Cas. Co. v. LiMauro, 65 N.Y.2d 369, 372 (1985)); see also Wesco, 585 F. Supp. 3d at 469 (same). That determination turns on "the 'other insurance' provisions in the [two] policies." Int'l Bus. Machines, 303 F.3d at 429.

Where an "other insurance" provision states that "the coverage of one insurer must be primary and the other excess thereto, the primary insurer must pay up to the limits of its policy before the excess insurer becomes obligated to pay under its policy." 83 Kajima Const. Servs., Inc. v. Cati, Inc., 302 A.D. 2d 228, 229 (1st Dept. 2003) (citing Great N. Ins. Co. v. Mount Vernon Fire Ins. Co., 92 N.Y.2d 682, 687 (1999)); see Wesco, 585 F. Supp. 3d at 471 (citing Osorio v. Kenart Realty, Inc., 48 A.D. 3d 650, 653 (2d Dept. 2008) for the same proposition).

B.    **Analysis**

1.    **Whether the Travelers and Clear Blue Policies Cover the Same Risk**

The Travelers Policy and the Clear Blue Policy both provide coverage for "bodily injur[ies]" sustained at the 450 Lexington Avenue job site resulting from Toprock's acts or omissions. (Szczepanski Decl., Ex. 1 (Dkt. No. 24-1) (Travelers Policy) at 14, 29, 41 (providing coverage to (1) J.T. Magen for "bodily injur[ies]" caused by an accident; and (2) RXR for

"bodily injur[ies]" "[i]f, and only to the extent that, the injury . . . is caused by acts or omissions of [J.T. Magen] or [Toprock]"); id., Ex. 2 (Dkt. No. 24-27) at 71 (Clear Blue Policy) (providing coverage to J.T. Magen and RXR for "bodily injury" "caused in whole or in part by [Toprock's] acts or omissions" at the 450 Lexington Avenue job site))

Because Harry asserts that he suffered bodily injury as a result of Toprock's failure to provide necessary equipment at the 450 Lexington Avenue job site (see Anderson Decl., Ex. 10 (Dkt. No. 25-3) (Harry Bill of Particulars) ¶ 5; Szczepanski Decl., Ex. 3 (Dkt. No. 24-28) (Harry Cmplt.) ¶ 37), his negligence action triggers coverage under both policies. See Beazley, 150 F. Supp. 3d at 357-58.

Clear Blue argues, however, that the two policies cover a different level of risk because (1) "Travelers issued its policy to J.T. Magen as a named insured" and "to RXR as an additional insured," while the Clear Blue Policy covers both entities only as additional insureds; (2) the Travelers Policy "provides aggregate coverage [up to] $6 million," while the Clear Blue Policy "provides aggregate coverage [only up to] $2 million"; and (3) the Travelers Policy covers "hundreds of projects and hundreds of specific, different insureds," while the Clear Blue Policy covers only Toprock's work as a subcontractor at the 450 Lexington Avenue job site. (Def. Opp. (Dkt. No. 26) at 11-12)

As discussed above – in determining whether two policies provide coverage for the "same risk" – a court does not demand "identity in minute particular of the terms, conditions and provisions of each policy." Ocean Harbor, 454 F. Supp. 3d at 183. Accordingly, Clear Blue's arguments regarding the broader scope and higher coverage limits of the Travelers Policy are not persuasive. Such distinctions are "immaterial." Id. at 184 (although one insurer's policy was a "commercial policy" that "provided much broader coverage" than the other insurer's

policy, both policies "expressly covered" the same risk); see also Nat'l Union Fire Ins. Co. of

Pittsburgh, Pa. v. Hartford Ins. Co. of Midwest, 248 A.D. 2d 78, 84 (1st Dept. 1998) ("The fact

that [one] policy was a commercial general liability policy, much broader than [the other policy],

does not establish that the policies did not insure the same risk"), aff'd, 93 N.Y.2d 983 (1999).

>            2.        **Whether the Travelers Policy's Coverage is Co-Primary**
>                      **or Excess to the Clear Blue Policy's Coverage**

Having concluded that Harry's negligence claim triggers coverage under both the

Travelers Policy and the Clear Blue Policy, the Court must determine the priority of coverage.

Travelers contends that it is entitled to summary judgment on its claim that its

coverage is in "excess" of Clear Blue's coverage, such that Clear Blue owes a "primary" duty to

defend J.T. Magen and RXR in the Harry action.  (Cmplt. (Dkt. No. 1) at 6; Pltf. Br. (Dkt. No.

23) at 15-16)

Clear Blue, for its part, does not dispute that its policy provides "primary" and

non-contributory coverage to J.T. Magen and RXR.  (See Def. R. 56.1 Resp. (Dkt. No. 27) at 4-5

¶ 8; see Szczepanski Decl., Ex. 2 (Dkt. No. 24-27) (Clear Blue Policy) at 61 (stating that the

Clear Blue Policy "shall be primary to any insurance carried by an additional insured," and "any

insurance carried by such additional insured shall not be called upon to contribute to any claim

covered under [the Clear Blue Policy]"))  Clear Blue argues, however, that Travelers and Clear

Blue are co-primary insurers, equally responsible for defending J.T. Magen and RXR in the

Harry action.  (Def. Opp. (Dkt. No. 26) at 12-13, 15)

Under the Travelers Policy, J.T. Magen is a named insured.  (Szczepanski Decl.,

Ex. 1 (Dkt. No. 24-1) (Travelers Policy) at 26)  The "Other Insurance" clause of the Travelers

Policy provides, however, that if J.T. Magen "is added as an additional insured under any other

policy," then it will receive "excess" coverage "over any of the other insurance . . . that is

available to [J.T. Magen]." (Id. at 37)  Clear Blue does not dispute that J.T. Magen is an additional insured under the Clear Blue Policy.  (See Def. R. 56.1 Resp. (Dkt. No. 27) at 3 ¶ 6; Szczepanski Decl., Ex. 2 (Dkt. No. 24-27) (Clear Blue Policy) at 71 (listing J.T. Magen as an additional insured))

As to RXR, the Travelers Policy names it as an additional insured.  (Szczepanski Decl., Ex. 1 (Dkt. No. 24-6) (Travelers Policy) at 61)  As to an additional insured, the Travelers Policy provides that its coverage "is excess over any valid and collectible other insurance . . . that is available to [the covered entity] for a loss [Travelers] cover[s] . . . ." (Id. (Dkt. No 24-1) at 41)  The Travelers Policy provides, however, that it will be "primary to other insurance available to the additional insured which covers that person or organization as a named insured for such loss," if the general contractor agreement between J.T. Magen and its client "specifically requires that [the Travelers Policy] apply on a primary basis." (Id.) (internal quotation marks omitted)

As explained above, the Clear Blue Policy provides coverage to RXR for the same risk that the Travelers Policy covers.  Moreover, Clear Blue does not dispute that the Clear Blue Policy covers RXR as an additional insured, and not as a named insured.  (Def. R. 56.1 Resp. (Dkt. No. 27) at 3 ¶ 6; Szczepanski Decl., Ex. 2 (Dkt. No. 24-27) (Clear Blue Policy) at 71 (listing RXR as an additional insured); see also id. at 3, 6 (defining the "Named Insured" as Toprock Interiors Inc.))  Because the Clear Blue Policy covers RXR as an additional insured and

not as a named insured, the exception in the Travelers Policy does not apply,[8] and therefore the

coverage Travelers provides to RXR in the Travelers Policy is excess.[9]

        Travelers Prop. Cas. Co. of Am. v. Wesco Ins. Co., 585 F. Supp. 3d 463

(S.D.N.Y. 2022) – cited by Clear Blue in arguing that "Travelers co-insure[s] RXR" (Def. Opp.

(Dkt. No. 26) at 12-13) – is not to the contrary.

        In Wesco, a general contractor entered into a contract with a client to perform

construction work. Under their contract, the contractor was required to "include [the client] as

an additional insured under its commercial general liability policy on a primary and non-

contributory basis." Wesco, 585 F. Supp. 3d at 466. The general contractor hired a

subcontractor. Under their agreement, the subcontractor was required to obtain a general

liability insurance policy and to include the general contractor and the client "as additional

insureds on a primary and non-contributory basis." Id. At summary judgment, the court

---

[8] Clear Blue contends that – under the general contractor agreement between J.T. Magan and its client – J.T. Magen was required to maintain insurance coverage for RXR on a primary and non-contributory basis. (See Def. R. 56.1 Resp. (Dkt. No. 27) at 13 ¶¶ 1, 5) As noted above, however, the general contractor agreement between J.T. Magen and its client is not in the record. Accordingly, the Court cannot credit this factual representation. See Fed. R. Civ. P. 56(c)(1)(A) (requiring that a party "must support [its] assertion by citing to particular parts of materials in the record."); Local Civ. R. 56.1(d) (requiring that "[e]ach statement by the . . . opponent under Rule 56.1(a) . . . must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c).").

In any event, the Travelers Policy exception applies only where the "other insurance" covers the Travelers policyholder as a named insured. (Szczepanski Decl., Ex. 1 (Dkt. No. 24-1) (Travelers Policy) at 41) As explained above, the "other insurance" here lists RXR as an additional insured and not as a named insured.

[9] Indeed, the Travelers Policy contemplates the precise circumstances at issue here, and unambiguously provides that where an entity is an additional insured under any "other insurance," Travelers' coverage "still is excess" to such other insurance. (Szczepanski Decl., Ex. 1 (Dkt. No. 24-1) (Travelers Policy) at 41)

considered priority of coverage between the general contractor's insurance carrier – Travelers – and Wesco, the subcontractor's insurance carrier.

In concluding that the insurers shared a co-primary duty to defend the general contractor's client, the court considered the following two provisions in the general contractor's insurance policy:

- A "[b]lanket" endorsement for additional insureds: "Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured . . . unless a written contract or written agreement . . . specifically requires that this insurance apply on a primary or non-contributory basis." Under this provision, the general contractor's insurer would provide the general contractor's client with primary insurance.

- An "other insurance" provision: Travelers' obligations are "excess over any of the other insurance, . . . that is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy." Under this provision, the general contractor's insurer would provide the general contractor's client with excess coverage.

Id. at 467, 472. The court found that these two provisions were in "conflict," such that the general contractor's insurance policy was "facially ambiguous." Id. at 472. As a result, the Wesco court considered "extrinsic evidence of the parties' intent" to determine the priority of coverage between the two insurance carriers. Id. at 472-73 (citing Int'l Multifoods, 309 F.3d at 87).

Wesco is not on point here, because it is premised on a different insurance policy that contains different provisions. In particular, the Travelers Policy at issue here does not contain the "[b]lanket" endorsement at issue in Wesco. See id. at 467. And unlike in Wesco, the Travelers Policy is not ambiguous regarding the priority of coverage between Clear Blue and Travelers. Accordingly, Clear Blue's reliance on Wesco is misplaced.

## CONCLUSION

For the reasons stated above, Plaintiff Travelers' motion for summary judgment (Dkt. No. 21) is granted as to Clear Blue's duty to defend, because Clear Blue owes a primary duty to defend J.T. Magen and RXR in the <u>Henry</u> action, and Travelers' coverage is in excess of Clear Blue's coverage. Travelers' motion is denied without prejudice as to Clear Blue's duty to indemnify. The Clerk of Court is directed to terminate the motion (Dkt. No. 21).

By **September 30, 2024**, the parties will submit a joint letter stating how they wish to proceed in light of the Court's decision.

Dated: New York, New York
      September 17, 2024

                                    SO ORDERED.

                                    Paul G. Gardephe
                                    United States District Judge